# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE NEO WIRELESS, LLC PATENT LITIG. | Case No. 2:22-md-03034-TGB<br><br>Hon. Terrence G. Berg |

███████████████████████████████████

# DEFENDANTS' MOTION TO COMPEL PRODUCTION OF NEO'S LICENSING NEGOTIATIONS WITH AVANCI

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  Should plaintiff Neo Wireless LLC ("Neo") be compelled to produce its patent licensing negotiations with third-party Avanci, LLC ("Avanci") where:

- Avanci is the world's largest automotive OEM patent licensing entity for 4G/LTE cellular patents, and Neo is asserting its patents against the Defendant automotive OEM's 4G/LTE cellular technology;
- Each Defendant is a licensee of Avanci;
- Neo admitted in an interrogatory response that it was negotiating with Avanci to secure a patent license that would cover each of the asserted patents, each of the Defendants, and the alleged infringement asserted in this case;
- Avanci permitted at least one Defendant (Ford) to produce in discovery its patent license negotiations with Avanci; and
- Neo seeks damages in the form of a "reasonable royalty" under 35 U.S.C. §284 and the Federal Circuit has held that a patentee's negotiations to license its asserted patents are squarely relevant to the reasonable royalty determination.

**Defendants' answer:** Yes.

## CONCURRENCE PURSUANT TO L.R. 7.1(a)

Pursuant to L.R. 7.1(a), the parties met-and-conferred on numerous occasions regarding the relief sought in this Motion. The Court held a Status Conference on September 13, 2023 to discuss the parties' discovery dispute, and authorized the Defendants to file this Motion.

i

# **TABLE OF CONTENTS**

CONCISE STATEMENT OF ISSUES PRESENTED ............................................. i

CONCURRENCE PURSUANT TO L.R. 7.1(a) .................................................... i

TABLE OF AUTHORITIES ................................................................................ iii

I.    INTRODUCTION .................................................................................... 1

II.   BACKGROUND ...................................................................................... 1

    A.    Summary of Neo's Patent Infringement Claims ................................ 1

    B.    The Avanci 4G/LTE Patent Pool......................................................... 2

    C.    Defendants' Requests for Neo's Licensing Negotiations.................... 3

    D.    The Present Discovery Dispute Regarding Avanci............................. 4

III.  ARGUMENT ............................................................................................ 5

    A.    The "claim charts/analyses" exchanged between Neo and Avanci ................................................................................................ 5

    B.    Neo's communications with Avanci about a "group resolution of this litigation" are relevant and are not privileged ........................10

IV.   CONCLUSION .......................................................................................10

# **TABLE OF AUTHORITIES**

## **Cases**

*Ericsson, Inc. v. D-Link Systems, Inc.*,
　　773 F. 3d 1201 (Fed. Cir. 2014) .................................................................. 7

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
　　318 F. Supp. 1116 (S.D.N.Y.1970) ..........................................................2, 7

*High Point Sarl v. Sprint Nextel Corp.*,
　　No. 09-2269-CM-DJW, 2012 WL 1533213 (D. Kan. Apr. 30, 2012) ........... 8

*Iafrate v. Warner Norcross & Judd, LLP*,
　　335 F.R.D. 378 (E.D. Mich. 2020) ............................................................... 9

*In re Smirman*,
　　267 F.R.D. 221 (E.D. Mich. 2010) (Zatkoff, J.) .......................................... 9

*Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*,
　　254 F.R.D. 568 (N.D. Cal. 2008) ............................................................7, 10

*Rembrandt Pat. Innovations, LLC v. Apple Inc*,
　　No. C 14-05093, 2016 WL 427363 (N.D. Cal. Feb. 4, 2016) ....................... 9

*Thought, Inc. v. Oracle Corp.*,
　　No. 12-CV-05601, 2014 WL 3940294 (N.D. Cal. Aug. 11, 2014) ............... 9

## **Rules**

F.R.E. 408 ........................................................................................................10

# I. INTRODUCTION

The Avanci patent license is highly relevant to this case and reflects a "reasonable royalty." (*See* ECF No. 175, PageID.11061.) Defendants seek relevant evidence Neo is withholding regarding **(i)** Avanci's determination as to whether Neo's asserted patents cover the 4G/LTE cellular "standards" Neo relies on to allege infringement in this case, and **(ii)** Avanci's determination of Neo's share of the Avanci license fee that is attributable to the asserted patents. Neo *admits* its negotiation with Avanci was directed to the asserted patents and the Defendants, all of whom are Avanci licensees. Neo's "privilege" objection to disclosing this highly relevant factual information is factually unsupported, contrary to the law, and should be overruled. For the reasons detailed below, the Court should compel Neo to produce the materials exchanged with Avanci in licensing negotiations.

# II. BACKGROUND

## A. Summary of Neo's Patent Infringement Claims

Neo asserts that Defendants infringe six U.S. patents through the inclusion of "4G/LTE" cellular modem devices in Defendants' vehicles. The asserted patents make no reference to vehicles or automotive technology. Rather, they are directed exclusively to low-level features operating, if at all, inside of a cellular "modem" chipset supplied to the Defendants for incorporation in their vehicles. The term "4G/LTE" refers to published "standards" that manufacturers of cellular modem

1

chipsets (and stationary cell towers) use to ensure their products can communicate with one another. Neo alleges "[t]he inventions in the Patents-in-Suit relate to various improvements in OFDMA networks and corresponding user equipment, and those improvements have since been incorporated into the 3GPP standards for 4G/LTE and 5G/NR networks" and "the Asserted Patents read onto portions of the 4G/LTE or NR/5G standards." (*See* ECF No. 28, PageID.60, 64.)[1]

Neo seeks damages for Defendants' alleged infringement in the form of a "reasonable royalty." (ECF No. 98-3, PageID.8148.) Neo asserts the reasonable royalty should be determined using, among other things, the time-honored "*Georgia-Pacific* analysis," including "**Neo's licensing … history**." (*Id.*)[2]

**B.    The Avanci 4G/LTE Patent Pool**

Avanci is the world's largest 4G/LTE cellular "patent pool." Its portfolio includes ***thousands*** of patents, held by more than 50 patent owners, that are alleged to be "essential" to the implementation of the 4G/LTE standard. More than 40 automotive OEMs—including all of the Defendants in this case—have procured licenses to those patents through Avanci. The licenses allow the OEMs to include cellular features in their vehicles without fear of infringement claims by the Avanci licensors (regardless of the merit of such infringement claims, which is often

---

[1] Neo recently dropped its infringement claims against the "NR/5G" standard.

[2] Unless otherwise indicated, all emphasis is added.

2

disputed). Defendants pay Avanci a per-vehicle license fee, and Avanci distributes portions of that fee to the 4G/LTE patent owners.

The size of Avanci's patent pool is central to the royalty determination for Neo's patents in this case. In October 2017, Avanci represented ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅.[4] Avanci states that it "simplifies patent licensing by reducing complexity, increasing efficiency and ensuring fairness for licensors and licensees."[5] These facts confirm the Court's stated view as to the relevance of the Avanci license to the determination of a reasonable royalty. (ECF No. 175, PageID.11061.)

## C. Defendants' Requests for Neo's Licensing Negotiations

Early in discovery, Defendants served interrogatories and document requests on Neo seeking basic information relevant to the reasonable royalty determination. Common Interrogatory No. 2 and Document Request No. 49 are representative. (Exs. B and C.) Among other things, these requests seek a description of "the substance and outcome of all license discussions and/or negotiations … relating to

---

[3] The term "SEP" refers to a Standard Essential Patent."

[4] In October 2017, Avanci ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Each of these other companies since has joined Avanci's 4G/LTE pool. *See* https://www.avanci.com/vehicle/4gvehicle.

[5] *See* https://www.avanci.com/about.

3

any Asserted Patent," and production of related documents and communications.

Neo's original response to this discovery provided only objections and no substantive response. (Ex. B, pp. 10-12; Ex. C.) Neo's first supplemental response admitted ███████████████████████████████████████ ███████████████████████████████████████." (*Id.*, p. 17.) But Neo refused to provide the details of its negotiation, claiming an unsubstantiated "common legal interest." *Id.* Defendants explained to Neo that its objections were improper. (Ex. D, 7/28/23 Letter from LeRoy to Stewart.)

On September 1, 2023, Neo supplemented its response to provide additional information concerning its negotiation with Avanci. (Ex. B, pp. 18-20.) For example, Neo disclosed ███████████████████████████████████ ███████████████████████████████████████." (*Id.*, p. 19.) However, Neo continued to withhold crucial documents, communications, and information regarding the Avanci negotiations—including ████████████ ███████████████████████████████████████.[6]

D.  **The Present Discovery Dispute Regarding Avanci**

While Neo has *selectively* agreed to provide some information, a dispute remains over relevant information Neo admits it is withholding—Neo's emails and other correspondence with Avanci, as well as the documents exchanged between the

---

[6] Neo subsequently agreed to provide this information but has not done so.

parties during their negotiations, such as memoranda, reports, draft agreements, offers to license, and patent valuations ("The Avanci Materials"). In addition, shortly before the September 13, 2023 Status Conference, Neo enumerated two highly significant categories of documents it is withholding that fall within the scope of Defendants' requests: (1) "[Neo's] infringement claim charts/analyses that were shared with Avanci by email"; and (2) Neo's "discussions" with Avanci "about a possible group resolution of this litigation." (Ex. E.)

At the conclusion of the Status Conference, the Court granted Defendants permission to submit this Motion to Compel the information Avanci is withholding responsive to Defendants' discovery requests. (ECF No. 175, PageID.11082-83.)

### III.   ARGUMENT

Through fact discovery, Defendants learned that Neo considered joining the Avanci 4G/LTE patent pool as a licensor of *the same patents asserted in this case*. Neo and Avanci exchanged documents and communications regarding the value of Neo's asserted patents relative to the Avanci portfolio as a whole, and documents comparing the patents to the 4G/LTE standard at issue in this case. While *all information exchanged between Neo and Avanci* is relevant and should be produced, defendants focus below on the two categories Neo confirmed it is withholding.

**A.   The "claim charts/analyses" exchanged between Neo and Avanci**

Neo's pleading that "the Asserted Patents read onto portions of the 4G/LTE

5

… standard" (ECF No. 28, PageID.60, 64) is at the core of Neo's infringement claims in this case. Thus, the "claim charts/analyses" exchanged between Neo and Avanci – which Neo admits  – are squarely relevant evidence in this case.

Avanci documents describe ." (Ex. F, NEO-AUTO_0104952.) Avanci defines

(*Id.*, NEO-AUTO_0104951.)

(*Id.*, NEO-AUTO_0105114.)

Thus, the exchanges Neo admits it is withholding concerning Neo's patents are relevant to both Neo's infringement theories against Defendants and the value of Neo's patent portfolio (as determined by Avanci). As Neo's counsel explained during the status conference, "when you do a comparable license damages model, ***what you have to do is look at the ways that the comparable license evaluated the value of the technology***." (ECF No. 175, PageID.11061.) The Neo-Avanci licensing discussions are part of Neo's "licensing history" identified in its Rule 26(a)(1) initial disclosures. (ECF No. 98-3, PageID.8148.) Importantly, Neo does

6

not deny the withheld materials are relevant.

Other materials Neo shared with Avanci during the negotiation, such as the value of Neo's pre-existing licenses with third-parties other than Avanci, are also relevant the reasonable royalty analysis. Neo states that Avanci offered Neo a ███████████████████████████████████ (Ex. B, p. 19.)  According to Avanci, ██████████████████████████████████████████████████ ██████████████████████████. (Ex. F, NEO-AUTO_0105338.)   Neo's prior license revenue is relevant to at least "*Georgia Pacific*" factor one.  *See Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F. 3d 1201, 1207 (Fed. Cir. 2014), *citing Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.1970) (finding that "**royalties received by the patentee for the licensing of the patent in suit**" is a relevant factor for the jury to consider).

Neo's basis for withholding this relevant information has evolved.  In its original interrogatory response, Neo asserted it is not required to turn over details of "unconsummated" licensing negotiations.  (Ex. B, p. 10.)  To the extent Neo continues to maintain that objection, it is improper.  *See Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582–85 (N.D. Cal. 2008) (adopting defendant's view that licensing communications "are relevant to show … what [the patentee] would consider a reasonable royalty rate for the patents-in-suit."); *High Point Sarl v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2012 WL 1533213, at *9 (D. Kan.

Apr. 30, 2012) (ordering production of "ongoing and unconsummated patent licensing communications with third parties in the absence of a consummated agreement" because they are "relevant to whether prior licenses are comparable and to the calculation of a reasonable royalty.").

Most recently, Neo asserted that the Avanci Materials were "prepared by Neo with counsel in anticipation of litigation, and were shared with Avanci under NDA or with an expectation of confidentiality" and that "[w]ork product protection is not waived by sharing confidentially with a non-adversary in these circumstances." (Ex. E.)  Neo's positions are each improper.  First, the materials were not "prepared in anticipation of litigation," they were prepared as ▬▬▬▬▬▬▬▬▬▬" to *share* with Avanci for its patent *valuation*.  (Ex. F, NEO-AUTO_0104952.)  Avanci does not litigate patent assertions; it is a licensing entity only. And it appears that Neo was already in litigation with Defendants when the communications with Avanci were made.  This undermines Avanci's assertion that the communications were "in anticipation" of litigation.

Second, even if Neo's materials constituted attorney work product at the time they were first made, Neo waived that protection when it shared them with Avanci. And Neo's alleged privilege would not apply to the materials Neo received *from Avanci*.  The common interest doctrine provides a limited exception to waiver, but it does not apply here.  Neo's assertion of non-waiver is relevant only if Neo and

8

Avanci had agreed – *before* the exchange – that they share a common legal interest. *See In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010) (Zatkoff, J.) (addressing the common interest privilege "when parties enter into a common-interest agreement"). Neo and Avanci entered into a routine confidentiality agreement, but it makes no reference to any "common legal interest" and includes no agreement to receive privileged information from the other party, and no obligation to maintain that information as privileged. (Ex. G.) *See Rembrandt Pat. Innovations, LLC v. Apple Inc*, No. C 14-05093, 2016 WL 427363, at *8 (N.D. Cal. Feb. 4, 2016) (compelling production of attorney work product exchanged with third parties, despite existence of a non-disclosure agreement); *Thought, Inc. v. Oracle Corp.*, No. 12-CV-05601, 2014 WL 3940294, at *2 (N.D. Cal. Aug. 11, 2014) (same).

More fundamentally, Neo and Avanci lack a common legal interest because they are at ***opposite ends*** of a licensing negotiation. Their legal interests are adverse, whereas the law requires an "identical legal interest" for any common legal interest privilege to apply. *Iafrate v. Warner Norcross & Judd, LLP*, 335 F.R.D. 378 (E.D. Mich. 2020). *See also*, *Rembrandt*, 2016 WL 427363, at *7-8 (compelling NPE to produce its communications with inventors of the patents it sought to acquire, even though they contained analysis of the patents and identification of potential litigation targets); *Thought*, 2014 WL 3940294, at *3 (compelling production of patentee's failed negotiations with NPEs to assign and jointly monetize the patents-in-suit).

9

Neo's "common legal interest" argument is also undermined by the fact that Avanci permitted at least one of its licensees (Ford) to produce licensing communications in this case. (Ex. H.) Neo's assertion is improper, and the Court should overrule it.

**B.     Neo's communications with Avanci about a "group resolution of this litigation" are relevant and are not privileged**

Neo admits it is withholding "distinct discussions about a possible group resolution of this litigation." (Ex. E.) Neo never identifies the "group" to which it refers (and the Defendants have not received any "group settlement" offer), but such communications are relevant to Avanci's valuation of the asserted patents and thus the reasonable royalty inquiry. As explained above, Neo's communications with Avanci are not attorney work product and do not qualify for any "common interest privilege." Further, to the extent Neo asserts an objection under F.R.E. 408, it is improper. *See Phoenix Sols.*, 254 F.R.D. at 582-583 (rejecting patentee's Rule 408 objection noting "[r]elevancy for discovery is flexible and has a broader meaning than admissibility at trial").

## IV.     CONCLUSION

For the above reasons, the Court should compel Neo to turn over and supplement its discovery responses with respect to all communications and other exchanges with Avanci relating to the asserted patents.

| | |
|---|---|
| Date:  September 27, 2023 | Respectfully submitted, |
| /s/ *John S. LeRoy* | /s/ *Peter J. Brennan* |
| John S. LeRoy (P61964) | Reginald J. Hill (IL Bar #6225173) |

Christopher C. Smith (P73936)
Kyle G. Konz (P79452)
BROOKS KUSHMAN P.C.
1000 Town Center, 22nd Floor
Southfield, MI  48075
Telephone: (248) 358-4400
jleroy@brookskushman.com
csmith@brookskushman.com
kkonz@brookskushman.com

*Counsel for Defendant*
*Ford Motor Company*

*/s/ Joseph A. Herriges*
Joseph A. Herriges, MN Bar No. 390350
Conrad A. Gosen, MN Bar No. 0395381
James Huguenin-Love, MN Bar No. 0398706
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Telephone:  (612) 335-5070
herriges@fr.com, gosen@fr.com, huguein-love@fr.com

Michael J. McKeon, DC Bar No. 459780
Christian Chu, DC Bar No. 483948
Jared Hartzman, DC Bar No. 1034255
Joshua Carrigan, VA Bar No. 96911
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
Telephone:  (202) 783-5070
mckeon@fr.com, chu@fr.com, hartzman@fr.com, carrigan@fr.com

Peter J. Brennan (IL Bar #6190873)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
rhill@jenner.com
pbrennan@jenner.com

*Counsel for Defendants*
*Nissan North America Inc. and Nissan Motor Acceptance Corporation A/K/A Nissan Motor Acceptance Company LLC*

*/s/ Thomas H. Reger II*
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070

Lawrence Jarvis
Georgia Bar No. 102116
jarvis@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, Georgia 30309
Telephone: (404) 892-5005

Elizabeth Ranks
Massachusetts Bar No. 693679
ranks@fr.com
FISH & RICHARDSON P.C.
1 Marina Park Drive
Boston, Massachusetts 02210
Telephone: (617) 542-5070

J. Michael Huget (P39150)
Sarah E. Waidelich (P80225)
HONIGMAN LLP
315 East Eisenhower Prkwy., Ste. 100
Ann Arbor, MI 48108
Tel: (734) 418-4254
mhuget@honigman.com,
swaidelich@honigman.com

*Counsel for Defendants General Motors Company and General Motors LLC*

/s/ *Frank C. Cimino, Jr.*
Frank C. Cimino, Jr.
Megan S. Woodworth
Jonathan L. Falkler
Robert C. Tapparo
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4569
FCCimino@Venable.com
MSWoodworth@Venable.com
JLFalkler@Venable.com
RCTapparo@Venable.com

Patrick G. Seyferth (P47575)
Susan M. McKeever (P73533)
BUSH SEYFERTH PLLC
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
seyferth@bsplaw.com
mckeever@bsplaw.com

*Attorneys for Defendant FCA US LLC*

J. Michael Huget (P39150)
Sarah E. Waidelich (P80225)
HONIGMAN LLP
315 East Eisenhower Prkwy., Ste. 100
Ann Arbor, MI 48108
Tel: (734) 418-4254
mhuget@honigman.com
swaidelich@honigman.com

*Counsel for Defendant Tesla, Inc.*

/s/ *Deirdre M. Wells*
Susan M. McKeever
Justin B. Weiner
Bush Seyferth PLLC
100 West Big Beaver Rd., Suite 400
Troy, MI 48084
(248) 822-7851
mckeever@bsplaw.com
weiner@bsplaw.com

Daniel E. Yonan
Deirdre M. Wells
Ryan C. Richardson
William H. Milliken
Anna G. Phillips
Sterne, Kessler, Goldstein & Fox P.L.L.C
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600
dyonan@sternekessler.com
dwells@sternekessler.com
rrichardson@sternekessler.com
wmilliken@sternekessler.com
aphillips@sternekessler.com

*Counsel for Defendants Volkswagen Group of America, Inc. and Volkswagen Group of America Chattanooga Operations, Inc.*

/s/ *Paul R. Steadman*
Paul R. Steadman (Illinois Bar No. 6238160)
Matthew Satchwell (Illinois Bar No. 6290672)
Shuzo Maruyama (Illinois Bar No. 6313434)
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: 312.368.2135
Fax: 312.251.2850
paul.steadman@us.dlapiper.com
matthew.satchwell@us.dlapiper.com
shuzo.maruyama@us.dlapiper.com

Brian Erickson (Texas Bar No. 24012594)
DLA PIPER LLP (US)
303 Colorado Street, Suite 3000
Austin, Texas 78701-4653
Tel: 512.457.7059
Fax: 512.721.2263
brian.erickson@us.dlapiper.com

*Counsel for Defendants Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Engineering & Manufacturing North America, Inc. and Toyota Motor Credit Corporation*

/s/ *John T. Johnson*
John T. Johnson (New York Bar No.2589182)
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291
E-mail: jjohnson@fr.com

Ruffin B. Cordell (New York Bar No. 2589182)
Benjamin J Christoff
FISH & RICHARDSON P.C.
1000 Maine Ave., S.W., Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331
E-mail: Cordell@fr.com

Thomas Branigan (P41774)
Matin Fallahi (P84524)
Bowman and Brooke LLP
41000 Woodard Avenue, 200 East
Bloomfield Hills, MI 48304
Telephone: (248) 205-3300
Facsimile: (248) 205-3399
thomas.branigan@bowmanandbrooke.com
matin.fallahi@browmanandbrook.com

*Counsel for Defendants American Honda Motor Co., Inc. and Honda Development & Manufacturing of America, LLC*

13